**EXHIBIT G**

# C O H E N | V O L K

## E C O N O M I C   C O N S U L T I N G   G R O U P

1155 ALPINE ROAD
WALNUT CREEK, CA 94596
T 925.299.1200
F 925.482.0824
WWW.COHENVOLK.COM

# Expert Report Pursuant to Federal Rule of Civil Procedure, Rule 26(a)(2)(b)

## *Sepe v. Gordon Trucking, Inc., et al.*

Prepared by:

Mark Cohen
Chief Economist
Cohen Volk Economic Consulting Group

August 7, 2013

SOUTHERN CALIFORNIA OFFICE: 5743 SMITHWAY STREET, SUITE 106 · LOS ANGELES CA 90040 · T 323.722.8047

### 1.    Description of Assignment

I, Mark Cohen, Chief Economist of Cohen Volk Economic Consulting Group, have been retained by Anthony R. Rossmiller of Diepenbrock & Cotter LLP to evaluate economic losses, if any, to Robert Sepe in the case of *Sepe v. Gordon Trucking, Inc., et al.* I have also been asked to provide comments with regard to any economic loss analysis or testimony of economic damages experts for the plaintiff.

### 2.    Qualifications

Readers may be directed to the attached CV (Attachment A). In summary, I hold a Bachelor's degree in Business Administration, with an emphasis in Finance from U.C. Berkeley, a Master's degree in Business Management, with an emphasis in International Finance from Boston University, and a Master's degree in Counseling with an emphasis in Vocational Rehabilitation and Career Counseling from St. Mary's College. Additionally, I have business valuation training through the American Society of Appraisers. I have taught finance, business valuation and investments at the MBA level. I have provided deposition testimony in close to 500 cases, and I have testified at trial in over 100 cases.

### 3.    Documents Reviewed

In order to complete this assignment, I have reviewed the following documents:

1.    Deposition of Robert Anthony Sepe, Jr., dated February 21, 2012, and exhibits;
2.    Plaintiff's Response & Production of Documents, Set One, and attachments;
3.    Plaintiff's Responses to Interrogatories, Set No. One;
4.    Plaintiff's Expert Witness Disclosure [FRCP 26(a)(2)] of Gregory W. Sells, including Sells & Associates, Inc. letter report dated June 4, 2013;
5.    Correspondence from Tim Frounfelkner to Anthony R. Rossmiller, dated July 2, 2013, and attached income documentation;
6.    Employment records from Exodus Designs and Surfaces;
7.    Employment records from Block Tops, Inc.;
8.    July 10, 2013 report of Robert Mistretta, CPA, MBA;
9.    Defendants Gordon Trucking, Inc. and Elwood Hill's Rule 26 Reports and Expert Witness List, including Exhibit A – Rule 26 Report of Bruce M. McCormack, M.D., Exhibit B – Rule 26 Report of Jerome Antonio Barakos, M.D., Exhibit C – Rule 26 Report of Tami Rockholt, R.N., B.S.N., Exhibit D – Rule 26 Report of Richard "Rick" N. Robertson, Ph.D., and Exhibit E – Rule 26 Report of Laurence Neuman, P.E.;
10.    Supplemental report of Bruce M. McCormack, M.D., dated June 10, 2013;

1

11.   Addendum report of Gregory W. Sells, dated June 21, 2013;
12.   Deposition of Robert Mistretta, CPA, MBA, dated July 24, 2013, and
      exhibits;
13.   Deposition of Gregory Sells dated July 24, 2013, and exhibits;
14.   Vocational Consultation Report of Carla H. Kelley, MRC, CRC, CDMS,
      dated August 7, 2013.

## 4.    Other Work / Research

In forming my opinions, I have also relied upon data and statistics provided by
the Bureau of Labor Statistics, the Federal Reserve, the Social Security
Administration, and the Journal of Forensic Economics.

My office has also had telephonic contact with Carla H. Kelley, MRC, CRC,
CDMS, Vocational and Rehabilitation Consultant.

## 5.    Summary of Findings

Based on the expert reports of Dr. McCormack, Dr. Barakos and Dr. Robertson,
the medical complaints alleged to have resulted in Mr. Sepe's inability to work in
the occupations he was employed in prior to September 13, 2010 were not the
result of the September 13, 2010 motor vehicle accident.  As such, there is no
loss of Earning Capacity associated with the September 13, 2010 motor vehicle
accident.

However, my assignment includes responding to the opinions of damages
experts for the plaintiff.  In this regard, I have prepared economic loss reports
adopting the assumption that the accident of September 13, 2010 has caused
Mr. Sepe to be unable to work in the occupations he was engaged in prior to the
subject accident.  Incorporating opinions of Carla Kelley, MRC, CRC, CDMS, I
have prepared responsive reports, which are attached (See Attachment B).

## 6.    Analysis of Robert Mistretta

Mr. Mistretta's analysis assumes that Mr. Sepe is unable to return to work and
achieve mitigating earnings following the subject incident.  Dr. McCormack's
report of May 15, 2013 indicates that Mr. Sepe is capable of return to "light to
medium" work.  Mr. Sells' addendum letter of June 21, 2013 sets forth various
activities that would be recommended for Mr. Sepe aimed at obtaining
employment.  Despite the conclusions of Dr. McCormack and Mr. Sells,
Mistretta's analysis fails to identify any value of the future mitigation earning
capacity for Mr. Sepe other than zero.  As such, Mistretta's lost earning capacity
conclusions are incomplete and understated.
Mr. Mistretta assumes that Mr. Sepe would have worked to age 67 or age 70.
Nowhere in his report or his deposition testimony does Mr. Mistretta indicate that
he consulted worklife expectancy tables in reaching his conclusions.  Worker

2

participation in the labor force is a function of worker health, mortality, family circumstances, general economic circumstances, and many other factors. To address such realities, economists projecting lost earning capacity into the future tend to rely on objective data such as worklife expectancy tables in order to determine a reasonable period of time to forecast future lost earnings. According to the Worklife Tables published in the Journal of Forensic Economics in August of 2011, a 35 year old male with less than high school education has a worklife expectancy of 22.50 additional years. Mistretta's report computes lost earnings for a period ranging from 31.22 years to 34.22 additional years of work. Mr. Mistretta's assumptions regarding remaining work years go well beyond the objective measure of worklife expectancy indicated in the Journal of Forensic Economics, with resulting conclusions for lost earning capacity well above what would be the case had he relied upon a statistical worklife expectancy measure.

Mistretta's analysis assumes that 10-year treasury returns exceed inflation by 1.5% per year, and that wage growth exceeds inflation by 2% per year, implying that 10-year treasury returns lag wage growth by 1/2% per year. Therefore, Mistretta's "Net Discount Rate" with respect to wages is -.5% per year. Mistretta's future lost income calculations are projected for a period of approximately 27-30 years into the future. Examining a comparable period of time in the past, specifically the period 1984-2012, the following relationships between wage growth, price inflation and 10-year treasury returns occurred:

Annual Averages, 1984 – 2012:

| | |
|---|---|
| 10-Year Treasury Returns: | 6.05% |
| CPI-U Price Inflation: | 2.93% |
| Construction Laborer Earnings Increases: | 2.77% |

Over a several decade period approximating the future period of loss examined by Mistretta, interest returns exceeded inflation by 3.12% per year (vs. Mistretta assumption of 1.5%) and interest returns exceeded average construction laborer earnings increases by 3.28% per year (vs. Mistretta assumption of -.5%). Contrary to Mr. Mistretta's assumption that wage growth exceeds inflation by 2% per year, average wage increases for construction laborers have not kept up with price inflation. If Mr. Mistretta were to rely upon historically based Net Discount rates similar to the 1984-2012 averages listed above, his calculations for future lost income would be substantially reduced.

Exhibits to Mr. Mistretta's deposition include computations of net discount rates for historical periods ranging from 5 years to 25 years. Mistretta's Net Discount Rate summary indicates an average CPI rate of 3.97% for a 25 year term, which appears to have been calculated based on CPI-U index growth from an index of 118.5 in May, 1988 to an index of 235.979 in May, 2013. In attempting to verify his calculations, I found that the average annual growth rate in the CPI-U index was 2.79% per year, not 3.97% per year. Mistretta's other computations of the

3

historical growth rate for CPI-U appear to be overstated as well. Mistretta's apparent miscalculations of the CPI-U growth rate would help to explain his assumption of a long-run 1.5% Net Discount Rate relationship between 10-year treasury returns and price inflation. Mr. Mistretta testified to "real" wage growth of 2% per year and incorporated this assumption into his analysis. However, going through Mr. Mistretta's deposition exhibits, I was unable to find the Bureau of Labor Statistics backup data or articles that would verify that wages tend to grow at 2% per year above price inflation.

Mr. Mistretta's conclusions include prejudgment interest, calculated at the rate of 2.25% per annum. It is my understanding that an award of prejudgment interest, if any, would be a determination of the court at the time of trial. In my experience, the calculation of statutory interest is not a matter of expert opinion.

Mistretta associates the retirement ages of 67 and 70 with the value of Social Security benefits that would be received, implying that Social Security benefit value is maximized by delaying receipt of benefits until as late as age 70. A present value analysis taking into account the payment of benefits from retirement until the end of Mr. Sepe's life expectancy as well as the additional employee cost to fund benefits while Mr. Sepe remains employed reveals that the net present cash value to Mr. Sepe is not enhanced by delaying his retirement to age 67 or to age 70. In fact, the opposite is the case. The net present value to Mr. Sepe with respect to the costs of funding benefits and the value for the benefit payments to be received is higher when electing to receive the benefits at the earliest retirement age of 62 years and 1 month rather than delaying retirement to age 67 or to age 70.

Mistretta's analysis includes lost fringe benefits based on employer payments into the Medicare system equal to 1.45% of earnings. Given that Mr. Sepe has worked many years in the past, and is capable of work into the future as well, his eligibility for Medicare benefits is likely to occur independent of the fringe benefit amounts computed as lost to Mr. Sepe in Mr. Mistretta's calculations. Therefore, Mistretta's analysis overstates the actual loss of benefits to Mr. Sepe.

## 7.    Additional Attachments / Concluding Remarks

In addition to my CV and responsive calculation reports, enclosed is a list of testimonies in the past four years, and a company fee schedule. (Attachment C).

Please note that all work is based on information provided to date. If additional information is provided, I may augment or change my opinions.

4

# ATTACHMENT

# A

**COHEN | VOLK**

E C O N O M I C   C O N S U L T I N G   G R O U P

1155 ALPINE ROAD
WALNUT CREEK, CA 94596
T 925.299.1200
F 925.482.0824
WWW.COHENVOLK.COM

## MARK COHEN

## CURRICULUM VITAE

## FINANCIAL, STATISTICAL & REHABILITATION ECONOMIST

COHEN VOLK ECONOMIC CONSULTING GROUP, Walnut Creek, CA, 1995 to Present.
  Principal, Chief Economist.  Valuation of businesses and economic losses in business, personal injury, wrongful death, labor and marital litigation.  Preparation of statistical analyses, vocational, labor and job market consultation and studies. Development and placement of structured settlement alternatives.

BAY AREA PSYCHOTHERAPY TRAINING INSTITUTE, Lafayette, CA, 1994 to 2001.
  Member, Board of Directors.  Consultation in the business development and management of this non-profit training institute.

THE UDINSKY GROUP, Berkeley, CA, 1984 to 1995.
  Vice President.  Valuation of businesses and economic losses in business, personal injury, wrongful death, labor and marital litigation.  Preparation of statistical analyses, labor and job market consultation and studies.  Development and placement of structured settlement alternatives.

## TEACHING EXPERIENCE

DOMINICAN UNIVERSITY, San Rafael, CA, 1992 to 1998.
  Adjunct Professor of Graduate Level International Finance, Monetary Systems and Investments, M.B.A. Program; Undergraduate Level International Finance and Investments, Business School Program.

EUROPEAN BUSINESS SCHOOL, Brussels, Belgium, 1991.
  Adjunct Professor of Undergraduate Level Money and Banking, Statistics, and Management.

## EDUCATION

UNIVERSITY OF CALIFORNIA AT BERKELEY.  Bachelors of Science, Business Administration, 1982.  Emphasis in Finance.

BOSTON UNIVERSITY.  Masters of Science, Management, 1991.  Emphasis in International Finance.  Graduated first in class.

## EDUCATION CONTINUED

ST. MARY'S COLLEGE.  Masters of Arts, Counseling, 1998.  Emphasis in Vocational Rehabilitation and Career Counseling.

LINDENWOOD COLLEGE:  (1) Principles of Business Valuation, (2) Business Valuation Theory and Methodology, (3) Business Valuation: Selected Advanced Topics.

## PUBLICATIONS AND INVITED PRESENTATIONS

"Economic Issues For Vocational Experts To Consider in Vocational Analysis," presented to the California Association of Rehabilitation and Re-Employment Professionals, Oakland, November 2002.

"Estimating Economic Loss To Injured Self Employed Workers," presented to the American Rehabilitation Economics Associations (AREA), Reno, May 1998.

"Methodologies to Improve Economic and Vocational Analysis in Personal Injury Litigation," with Thomas Yankowski, M.S., C.V.E., Litigation Economics Digest, National Association of Forensic Economics, Missouri.  Volume II, Issue No. 2, Summer 1997. Also published in Vocational Evaluation and Work Adjustment Journal, The Professional Journal of The Vocational Evaluation and Work Adjustment Association, Volume 31, No. ¾, Fall/Winter 1998.

"Vocational Evaluation and Economic Analysis in Personal Injury and Wrongful Termination Cases," with Thomas Yankowski, M.S., C.V.E., presented to the National Association of Rehabilitation Professional in the Private Sector; San Francisco, April 1995.

"The Economics of Employment Discharge and Your Case," with Jerald H. Udinsky, Ph.D., A.S.A., The Lawyer's Brief, Business Laws, Inc., Ohio.  Volume 20, Issue No. 5, March 15, 1990.

"Estimation of Future Medical and Rehabilitation Care Costs: Issues and Questions for The Attention of Rehabilitation Professionals," presented to the Registered Nurses Professionals Association, Santa Clara Valley Medical Center, January 1990.

## LICENSES, CERTIFICATIONS AND ASSOCIATIONS

Certified Earnings Analyst, American Rehabilitation Economics Association.
American Society of Appraisers, Business Valuation.
California State Licensed Life Insurance Agent.
American Economics Association.
Western Economic Association.
National Association of Forensic Economics.

# ATTACHMENT B

# COHEN | VOLK

## ECONOMIC CONSULTING GROUP

1155 ALPINE ROAD
WALNUT CREEK, CA 94596
T 925.299.1200
F 925.482.0824
WWW.COHENVOLK.COM

**LOST EARNING CAPACITY TO ROBERT SEPE JR.**
**Response to Analysis of Mistretta**

Sepe v. Gordon Trucking

Major Assumption:

Return to Work as Indicated by Carla Kelley, MRC, CRC, CDMS
Direct Job Placement with Return to Work September 16, 2013

August 7, 2013

SOUTHERN CALIFORNIA OFFICE: 5743 SMITHWAY STREET, SUITE 106 · LOS ANGELES CA 90040 · T 323.722.8047

## Table 1

### Summary of Economic Loss

Earning Capacity Without Incident, Table 3:        $        74,985

## Table 2

### Actuarial Data

| | | |
|---|---|---|
| Date of Birth: | 12/1/1974 | |
| Date of Incident: | 9/13/2010 | |
| Date of Valuation: | 3/31/2014 | |
| Age at Date of Incident: | 35.79 | years |
| Time Elapsed Between Date of Incident and Valuation: | 3.55 | years |
| Age at Date of Valuation: | 39.33 | years |
| Worklife Expectancy at Date of Valuation (1): | 18.16 | years |

1 - Based on initially active men with 0-12 years of education, no diploma, no GED. "The Markov Process Model of Labor Force Activity: Extended Tables of Central Tendency, Shape, Percentile Points, and Bootstrap Standard Errors," Skoog, Ciecka, and Krueger; Journal of Forensic Economics, August 2011, Volume XXII, Number 2.

## Table 3

### Earning Capacity Without Incident

| Dates (1) | | | Period | Annual Earning Capacity (2) | | Period Loss | |
|-----------|---|---|--------|-----------------------------|---|-------------|---|
| 9/13/2010 | - | 12/31/2010 | 0.30 | $ | 22,625 | $ | 6,788 |
| 1/1/2011 | - | 12/31/2011 | 1.00 | $ | 23,248 | $ | 23,248 |
| 1/1/2012 | - | 12/31/2012 | 1.00 | $ | 23,683 | $ | 23,683 |
| 1/1/2013 | - | 9/15/2013 | 0.70 | $ | 24,126 | $ | 16,888 |
| Sub Total: | | | | | | $ | 70,607 |
| Plus Retirement Benefits (2): | | | | | | $ | 4,378 |
| **Total Past Earning Capacity Without Incident:** | | | | | | $ | 74,985 |

1 - Per information provided by Carla Kelley, MRC, CRC, CDMS, this analysis assumes that Mr. Sepe could have begun active participation in vocational return to work efforts as of 12/15/2012 with return to work effective 9/16/2013 at an annual earnings rate equal to or greater than Mr. Sepe's annual earnings rate of $24,126. Therefore, as of 9/16/2013, Mr. Sepe's annual earning capacity is equal to or greater than his annual earning capacity without incident and losses cease.

2 - Based on Mr. Sepe's average annual earnings 2003-2009, as indicated in earnings documentation provided. Adjustments to 2011-2013 dollars are based on changes in average weekly earnings, per the Bureau of Labor Statistics.

3 - Based on employer contributions to Social Security equal to 6.2% of earnings.

# COHEN | VOLK

## ECONOMIC CONSULTING GROUP

1155 ALPINE ROAD
WALNUT CREEK, CA 94596
T 925.299.1200
F 925.482.0824
WWW.COHENVOLK.COM

**LOST EARNING CAPACITY TO ROBERT SEPE JR.**
**Response to Analysis of Mistretta**

<u>Sepe v. Gordon Trucking</u>

<u>Major Assumption:</u>

Return to Work as Indicated by Carla Kelley, MRC, CRC, CDMS
Short Term Training with Return to Work March 17, 2014

August 7, 2013

SOUTHERN CALIFORNIA OFFICE: 5743 SMITHWAY STREET, SUITE 106 · LOS ANGELES CA 90040 · T 323. 722.8047

## Table 1

### Summary of Economic Loss

| | | |
|---|---|---|
| Earning Capacity Without Incident, Table 3: | $ | 87,892 |
| Cost of Training (1): | $ | 15,000 |
| **Total Economic Loss:** | $ | 102,892 |

1 - Per information provided by Carla Kelley, MRC, CRC, CDMS.

## Table 2

**Actuarial Data**

| | | |
|---|---|---|
| Date of Birth: | 12/1/1974 | |
| Date of Incident: | 9/13/2010 | |
| Date of Valuation: | 3/31/2014 | |
| Age at Date of Incident: | 35.79 | years |
| Time Elapsed Between Date of Incident and Valuation: | 3.55 | years |
| Age at Date of Valuation: | 39.33 | years |
| Worklife Expectancy at Date of Valuation (1): | 18.16 | years |

1 - Based on initially active men with 0-12 years of education, no diploma, no GED. "The Markov Process Model of Labor Force Activity: Extended Tables of Central Tendency, Shape, Percentile Points, and Bootstrap Standard Errors," Skoog, Ciecka, and Krueger; Journal of Forensic Economics, August 2011, Volume XXII, Number 2.

## Table 3

### Earning Capacity Without Incident

| Dates (1) | | | Period | Annual Earning Capacity (2) | | Period Loss | |
|-----------|---|---|--------|-----------|---|-------------|---|
| 9/13/2010 | - | 12/31/2010 | 0.30 | $ | 22,625 | $ | 6,788 |
| 1/1/2011 | - | 12/31/2011 | 1.00 | $ | 23,248 | $ | 23,248 |
| 1/1/2012 | - | 12/31/2012 | 1.00 | $ | 23,683 | $ | 23,683 |
| 1/1/2013 | - | 12/31/2013 | 1.00 | $ | 24,126 | $ | 24,126 |
| 1/1/2014 | - | 3/16/2014 | 0.20 | $ | 24,578 | $ | 4,916 |
| Sub Total: | | | | | | $ | 82,761 |
| Plus Retirement Benefits (2): | | | | | | $ | 5,131 |
| **Total Past Earning Capacity Without Incident:** | | | | | | **$** | **87,892** |

1 - Per information provided by Carla Kelley, MRC, CRC, CDMS, this analysis assumes that Mr. Sepe could have begun active participation in vocational return to work efforts as of 12/15/2012 with return to work effective 3/17/2014 at an annual earnings rate equal to or greater than Mr. Sepe's annual earnings rate of $24,578. Therefore, as of 3/17/2014, Mr. Sepe's annual earning capacity will be equal to or greater than his annual earning capacity without incident and losses cease.

2 - Based on Mr. Sepe's average annual earnings 2003-2009, as indicated in earnings documentation provided. Adjustments to 2011-2014 dollars are based on changes in average weekly earnings, per the Bureau of Labor Statistics.

3 - Based on employer contributions to Social Security equal to 6.2% of earnings.

# COHEN | VOLK

### ECONOMIC CONSULTING GROUP

1155 ALPINE ROAD
WALNUT CREEK, CA 94596
T 925.299.1200
F 925.482.0824
WWW.COHENVOLK.COM

**LOST EARNING CAPACITY TO ROBERT SEPE JR.**
**Response to Analysis of Mistretta**

Sepe v. Gordon Trucking

Major Assumption:

Return to Work as Indicated by Carla Kelley, MRC, CRC, CDMS
Short Term Training with Return to Work November 17, 2014

August 7, 2013

SOUTHERN CALIFORNIA OFFICE: 5743 SMITHWAY STREET, SUITE 106 · LOS ANGELES CA 90040 · T 323.722.8047

## Table 1

### Summary of Economic Loss

| I.  Past Period: | | Present Cash Value |
|---|---|---|
| Earning Capacity Without Incident, Table 3: | $ | 88,936 |
| | | |
| II. Future Period: | | |
| Earning Capacity Without Incident, Table 4: | $ | 16,318 |
| Cost of Training (1): | $ | 15,000 |
| **Future Economic Loss:** | $ | **31,318** |
| | | |
| III.  Past and Future Periods: | | |
| **Total Economic Loss:** | $ | **120,254** |

1 - Per information provided by Carla Kelley, MRC, CRC, CDMS.

## Table 2

### Actuarial Data

| | | |
|---|---|---|
| Date of Birth: | 12/1/1974 | |
| Date of Incident: | 9/13/2010 | |
| Date of Valuation: | 3/31/2014 | |
| Age at Date of Incident: | 35.79 | years |
| Time Elapsed Between Date of Incident and Valuation: | 3.55 | years |
| Age at Date of Valuation: | 39.33 | years |
| Worklife Expectancy at Date of Valuation (1): | 18.16 | years |

---

1 - Based on initially active men with 0-12 years of education, no diploma, no GED. "The Markov Process Model of Labor Force Activity: Extended Tables of Central Tendency, Shape, Percentile Points, and Bootstrap Standard Errors," Skoog, Ciecka, and Krueger; Journal of Forensic Economics, August 2011, Volume XXII, Number 2.

## Table 3

### Past Earning Capacity Without Incident

| Dates | Period | Annual Earning Capacity (1) | Period Loss |
|---|---|---|---|
| 9/13/2010 - 12/31/2010 | 0.30 | $ 22,625 | $ 6,788 |
| 1/1/2011 - 12/31/2011 | 1.00 | $ 23,248 | $ 23,248 |
| 1/1/2012 - 12/31/2012 | 1.00 | $ 23,683 | $ 23,683 |
| 1/1/2013 - 12/31/2013 | 1.00 | $ 24,126 | $ 24,126 |
| 1/1/2014 - 3/31/2014 | 0.24 | $ 24,578 | $ 5,899 |
| Sub Total: | | | $ 83,744 |
| Plus Retirement Benefits (2): | | | $ 5,192 |
| **Total Past Earning Capacity Without Incident:** | | | **$ 88,936** |

1 - Based on Mr. Sepe's average annual earnings 2003-2009, as indicated in earnings documentation provided.  Adjustments to 2011-2014  dollars are based on changes in average weekly earnings, per the Bureau of Labor Statistics.

2 - Based on employer contributions to Social Security equal to 6.2% of earnings.

## Table 4

### Future Earning Capacity Without Incident

| Dates (1) | Period | Annual Earning Capacity (2) | Present Cash Value (3) |
|---|---|---|---|
| 3/31/2014   -   11/16/2014 | 0.63 | $    24,578 | $      15,365 |
| Plus Retirement Benefits (4): | | | $           953 |
| **Total Future Earning Capacity Without Incident:** | | | **$      16,318** |

1 - Per information provided by Carla Kelley, MRC, CRC, CDMS, this analysis assumes that Mr. Sepe can begin active participation in vocational return to work efforts as of 8/15/2013 and return to work effective 11/17/2014 at an annual earnings rate equal to or greater than Mr. Sepe's lost annual earnings rate of $24,578.  Therefore, as of 11/17/2014, Mr. Sepe's annual earning capacity will be equal to or greater than his annual earning capacity without incident and losses cease.

2 - See Table 3, "Past Earning Capacity Without Incident," Footnote 1.

3 - 2.5% net discount rate.

4 - See Table 3, "Past Earning Capacity Without Incident," Footnote 2.

# ATTACHMENT C

## MARK COHEN
### LIST OF TESTIMONIES

| Date | Name | Memo |
|------|------|------|
| 2007 | Seitz v. New Holland | Deposition testimony. |
| 2007 | Kuchta v. Neopost, Inc. | Deposition testimony. |
| 2007 | James v. Phillips Services Corp. | Deposition testimony. |
| 2007 | Singh v. Winchell's Donut Houses | Trial testimony. |
| 2007 | O'Neill v. City of Palo Alto | Deposition testimony. |
| 2007 | Piper v. Peralta Community College Dist. | Trial testimony. |
| 2007 | Merritt v. Modesto Disposal Service | Deposition testimony. |
| 2007 | Tripodi v. Rider | Deposition testimony. |
| 2007 | Housley v. CCSF and CHP | Deposition testimony. |
| 2007 | Pilare v. Matson | Deposition testimony. |
| 2007 | Pilare v. Matson | Trial testimony. |
| 2007 | West v. Kmart | Deposition testimony. |
| 2007 | Zottoli v. Erasmus | Deposition testimony. |
| 2007 | Nakamori v. DMC San Pablo | Deposition testimony. |
| 2007 | Ivance v. Asbestos Defendants | Trial testimony. |
| 2007 | Kuchta v. Neopost, Inc. | Trial testimony. |
| 2007 | Franklin v. Alameda County Sheriff's Dept. | Deposition testimony. |
| 2007 | Little v. RMC | Deposition testimony. |
| 2007 | Bloom v. Kaiser | Deposition testimony. |
| 2007 | Caro v. Enviro-Commercial Sweeping | Deposition testimony. |
| 2007 | Barajas v. Ramos | Deposition testimony. |
| 2007 | Loustalot v. Regents | Deposition testimony. |
| 2007 | Lopez v. Bimbo Bakeries | Deposition testimony. |
| 2007 | Lopez v. Bimbo Bakeries | Trial testimony. |
| 2007 | Silong v. USA | Deposition testimony. |
| 2007 | Bauto v. Best Collateral | Deposition testimony. |
| 2007 | Bauto v. Best Collateral | Trial testimony. |
| 2007 | Watkins v. Davis | Deposition testimony. |
| 2007 | Watkins v. Davis | Trial testimony. |
| 2007 | Erickson v. Torres | Deposition testimony. |
| 2007 | Erickson v. Torres | Trial testimony. |
| 2007 | Freed v. USA | Deposition testimony. |
| 2007 | Day v. Mt. Diablo Hospital | Deposition testimony. |
| 2007 | Day v. Mt. Diablo Hospital | Trial testimony. |
| 2007 | USA v. Union Pacific | Deposition testimony. |
| 2007 | Smith, Joe Alan v. Spears | Deposition testimony. |
| 2007 | Smith, Joe Alan v. Spears | Trial testimony. |
| 2007 | Hoang v. UWMC | Deposition testimony. |
| 2007 | Hoang v. UWMC | Trial testimony. |
| 2007 | Chang & Chen v. Charles Schwab | Deposition testimony. |
| 2007 | Khosravi v. Ball | Deposition testimony. |
| 2007 | Khosravi v. Ball | Trial testimony. |
| 2007 | Beals-Martin v. Connell's Glass | Deposition testimony. |
| 2007 | Shilaimon v. Ray | Deposition testimony. |
| 2007 | Price, Colleen v. Cordova | Deposition testimony. |
| 2007 | Moore v. Avon | Deposition testimony. |
| 2007 | Bartlett v. Reiger | Deposition testimony. |
| 2007 | Bartlett v. Reiger | Trial testimony. |
| 2007 | Salvador v. Aero Speed Mail | Deposition testimony. |
| 2007 | Dougherty v. Sears | Deposition testimony. |

# MARK COHEN
## LIST OF TESTIMONIES

| Date | Name | Memo |
|------|------|------|
| 2007 | Wing v. Horizon Lines | Deposition testimony. |
| 2007 | Huong Que v. Pro Enterprise | Deposition testimony. |
| 2007 | Thomas, Audrey v. San Leandro Hospital | Deposition testimony. |
| 2008 | Cole v. Joe's Trucking | Deposition testimony. |
| 2008 | Ewing v. USA | Deposition testimony. |
| 2008 | Williams, Billy v. Kaiser | Deposition testimony. |
| 2008 | Williams, Billy v. Kaiser | Arbitration testimony. |
| 2008 | Moss v. LOTA USA | Deposition testimony. |
| 2008 | Moss v. LOTA USA | Arbitration testimony. |
| 2008 | Abdelrahim v. Guardsmark | Trial testimony. |
| 2008 | Starr v. Rados, Inc. | Deposition testimony. |
| 2008 | Bavaro v. Curtis | Deposition testimony. |
| 2008 | Dalman v. Kaiser | Deposition testimony. |
| 2008 | Melchor v. Kaiser | Deposition testimony. |
| 2008 | Melchor v. Kaiser | Arbitration testimony. |
| 2008 | Day v. Mt. Diablo Hospital | Deposition testimony. |
| 2008 | Barnett v. Balciunas | Deposition testimony. |
| 2008 | Iten v. Guardsmark | Trial testimony. |
| 2008 | Perez v. Walmart | Deposition testimony. |
| 2008 | Dahl v. Jennaro | Deposition testimony. |
| 2008 | Lawlor v. Olsen | Trial testimony. |
| 2008 | Bush v. Allianz Life Insurance Co. | Deposition testimony. |
| 2008 | Cano v. Barcelo Enterprises | Deposition testimony. |
| 2008 | Gentry v. State Farm | Deposition testimony. |
| 2008 | Gentry v. State Farm | Arbitration testimony. |
| 2008 | Evans v. Benicia Housing Authority | Deposition testimony. |
| 2008 | Ewing v. USA | Trial testimony. |
| 2008 | Hernandez v. USA | Deposition testimony. |
| 2008 | Altamini v. Kaiser | Deposition testimony. |
| 2008 | Altamini v. Kaiser | Arbitration testimony. |
| 2008 | Dept. of Fair Employment v. Standards of Excellence | Deposition testimony. |
| 2009 | Perez v. Walmart | Trial testimony. |
| 2009 | Bolo v. Cisco Systems | Deposition testimony. |
| 2009 | Bolo v. Cisco Systems | Arbitration testimony. |
| 2009 | Kiser v. Ralph Lauren | Deposition testimony. |
| 2009 | Gove v. Kaiser | Deposition testimony. |
| 2009 | Dept. of Fair Employment v. Standards of Excellence | Trial testimony. |
| 2009 | Walton v. Amoroso | Deposition testimony. |
| 2009 | Sutton v. Krones | Deposition testimony. |
| 2009 | Roth v. Division I All Services | Deposition testimony. |
| 2009 | Ureta v. ABS-CBN International | Trial testimony. |
| 2009 | Lawrence v. Hartnell College | Deposition testimony. |
| 2009 | Gutherie v. City of Mill Valley | Trial testimony. |
| 2009 | Miller v. State of California | Trial testimony. |
| 2009 | Stanley v. Kaiser | Deposition testimony. |
| 2009 | Stanley v. Kaiser | Arbitration testimony. |
| 2009 | Nikolayew v. R House | Deposition testimony. |
| 2009 | Sacramento Hotel Partners v. Swinterton, et al. | Deposition testimony. |
| 2009 | Kaznowski v. Biesen-Bradley | Deposition testimony. |
| 2009 | Ehlert v. Stutsman & Ken Fowler Motors | Deposition testimony. |
| 2009 | McElroy v. Lane | Deposition testimony. |