UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT SEPE, JR., <br><br> Plaintiff, <br><br> v. <br><br> GORDON TRUCKING, INC., a Washington corporation, ELWOOD HILL, and DOES 1 through 30 <br><br> Defendant. | No. 2:12-cv-01639-TLN-CKD <br><br> **ORDER DENYING PLAINTIFF'S MOTION FOR NEW TRIAL** |

This matter is before the Court on Plaintiff Robert Sepe Jr.'s ("Plaintiff") Motion for New Trial. (ECF No. 149.) The parties stipulated to allow Plaintiff to file a "supplemental/amended motion" due to a delay with receiving court transcripts. (ECF No. 153.) Plaintiff filed an Amended Motion for New Trial accompanied by a Supplemental Memorandum of Points and Authorities. (ECF Nos. 157 & 158.) Defendants Gordon Trucking, Inc. and Elwood Hill (collectively "Defendants") opposed Plaintiff's motion. (ECF No. 170.) Plaintiff filed a reply. (ECF No. 171.) Having carefully considered the arguments raised by both parties and for the reasons set forth below, the Court hereby DENIES Plaintiff's Motion for a New Trial (ECF No. 149).

///

///

## I. FACTUAL AND PROCEDURAL BACKGROUND

This case involves an auto versus truck accident in the Sacramento area.[1] Defendant Gordon Trucking, Inc., employed Defendant Hill as an operator of a tractor and trailer rig. On September 13, 2010, the truck driven by Defendant Hill and a Honda civic driven by Plaintiff entered the transition ramp from southbound Interstate Business 80 heading toward westbound Interstate 80/Highway 50. The truck was in the right lane and Plaintiff's vehicle was in the left lane of the transition ramp. The truck collided with Plaintiff's car when the truck changed from the right lane into the left lane of the transition ramp. Plaintiff's car hit the cement barrier to the left of the ramp after being struck by the truck. Defendant Hill did not observe the accident and continued to his destination in Tracy, California. Following the accident, Plaintiff received medical care, including surgery to his lumbar and cervical spine. He did not have health insurance. Plaintiff has not worked since the accident.

Plaintiff brought claims against Defendants for negligent operation of a truck and leaving the scene of an accident. (ECF No. 57 at 8.) Plaintiff sought to recover medical expenses, past and future lost earnings, and non-economic damages from pain and suffering. (ECF No. 57 at 8.) Before trial, Defendants filed Motion *in limine* # 9 (ECF No. 74), seeking to exclude Drs. Diaz, Orisek, and Lemons, Physical Therapists Beggs, Cassady and Thomas, and P.A. Lanum from providing expert opinion testimony at trial. (ECF No. 74 at 5.) Defendants argued Plaintiff had not appropriately disclosed the witnesses as experts and thus they were classified as percipient witnesses who could not provide expert opinion testimony. In his opposition, Plaintiff argued the Doctors were not required to file expert reports because they were testifying as treating physicians not retained experts. (ECF No. 97 at 12–13.) Plaintiff further asserted the Doctors were testifying as percipient witnesses and would only provide testimony related to their treatment of Plaintiff. (ECF No. 97 at 13.)

The Court held a hearing prior to the start of trial to resolve all motions *in limine*. (*See* Tr. of Proc. on Aug. 24, 2015, ECF No. 148.) At the hearing, the Court allowed the parties an

---

[1] The summary of the factual background is taken almost verbatim from the undisputed fact section of the Parties' Joint Pre-Trial Statement (ECF No. 57).

opportunity to be heard on motion *in limine* # 9. (*See* ECF No. 148.) After argument the Court made an initial ruling permitting Doctors Lemons and Orisek to testify as treating physicians, but they were prohibited from testifying as to "matters outside the scope of their treatment." (ECF No. 148 at 19:1–5.) After counsel requested clarification, the Court rescinded its previous order and took the matter under submission. (ECF No. 148 at 22:2–4.) The parties were permitted to submit additional briefing on the issue. (*See* ECF Nos. 108 & 112.) The Court revisited the issue on August 28, 2015, prior to Drs. Lemons and Orisek's testimony. (*See* Tr. of Proc. on Aug. 28, 2015, ECF No. 156.) Relying on *United States v. Urena* and *Goodman v. Staples*, the Court permitted Drs. Lemons and Orisek to testify about treatment and opinions they formed during the course of treatment. (ECF No. 156 at 8:6–8.)

Throughout the direct examination of Drs. Lemons and Orisek, the Court sustained many objections to questions which called for testimony outside the scope of treatment and more akin to expert testimony. (*See* ECF No. 156.) At the end of Plaintiff's case-in-chief, Defendants moved for Judgment as a Matter of Law. (*See* Tr. of Proc. Sept. 2, 2015, ECF No. 150.) The Court denied the motion on the basis that negligent causation could be proven based on non-expert testimony and that Plaintiff's counsel had misinterpreted the Court's ruling on causation. (ECF No. 150 at 3:3–13.) The Court permitted Plaintiff to recall Drs. Lemons and Orisek for the limited purpose of "render[ing] an opinion about causation based upon their percipient knowledge during treatment." (ECF No. 150 at 4:15–16.) Dr. Orisek retook the stand and Plaintiff's counsel elicited causation testimony based on Dr. Orisek's treatment of Plaintiff. (*See* Tr. of Proc. Sept. 4, 2015, ECF No. 166.) Dr. Lemons was not recalled due to his unavailability.

At the end of the trial, the question of causation was submitted to the jury and the jury returned a unanimous verdict in favor of Defendants. Plaintiff filed the instant Motion for New Trial and subsequent Supplemental Memorandum in support of his motion. (ECF Nos. 149 & 158.)

///

///

///

3

## II. STANDARD OF LAW

Federal Rule of Civil Procedure 59 ("Rule 59") provides that a court may "grant a new trial on all or some of the issues and to any party after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. Pro. 59(a)(1)(A). "Rule 59 does not specify the grounds on which a motion for a new trial may be granted." *Zhang v. Am. Gem Seafoods, Inc.*, 339 F.3d 1020, 1035 (9th Cir. 2003). "Rather, the court is bound by those grounds that have been historically recognized." *Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 729 (9th Cir. 2007) (internal citations omitted). Recognized grounds include, but are not limited to, allegations "that the verdict is against the weight of the evidence, that the damages are excessive, or that, for other reasons, the trial was not fair to the party moving." *Montgomery Ward & Co. v. Duncan*, 311 U.S. 243, 251 (1940).

The Ninth Circuit has held that "[t]he trial court may grant a new trial only if the verdict is contrary to the clear weight of the evidence, is based upon false or perjurious evidence, or to prevent a miscarriage of justice." *Molski*, 481 F.3d at 729; (quoting *Passantino v. Johnson & Johnson Consumer Prods.*, 212 F.3d 493, 510 n.15 (9th Cir. 2000)). "In considering a motion for a new trial, the court may weigh the evidence and assess the credibility of witnesses, and the court need not view the evidence in the light most favorable to the prevailing party." *Air–Sea Forwarders, Inc. v. Air Asia Co., Ltd.*, 880 F.2d 176, 190 (9th Cir. 1989). "District courts are granted broad discretion in admitting evidence, and their rulings are reviewed only for an abuse of discretion." *Ruvalcaba v. City of Los Angeles*, 64 F.3d 1323, 1328 (9th Cir. 1995) (citing *United States v. Dunn*, 946 F.2d 615, 617 (9th Cir. 1991). "A new trial is only warranted on the basis of an incorrect evidentiary ruling if the ruling substantially prejudiced a party. *United States v. 99.66 Acres of Land*, 970 F.2d 651, 658 (9th Cir. 1992).

## III. ANALYSIS

Plaintiff raises three potential grounds for a new trial. (ECF Nos. 146 & 158.) First, Plaintiff asserts the Court erred by prohibiting testimony about causation from Drs. Lemons and Orisek (hereinafter referred to as "the Doctors"). (ECF No. 158 at 19–20.) Plaintiff asserts the Court's ruling prejudiced him because the jury was not given an opportunity to hear causation

testimony during his case-in-chief. (ECF No. 158 at 22–23.) Second, Plaintiff argues the Court erred by referring to the Doctors as "lay witnesses" and that this prejudiced Plaintiff because the jury was instructed they may weigh opinion testimony of non-experts differently. (ECF No. 158 at 25–27.) Lastly, Plaintiff argues the Court erred by permitting the surveillance video to be used as impeachment evidence. (ECF No. 149-1 at 17–18.) Plaintiff asserts the video was prejudicial because it offered the jury a "glimpse into the scope of Mr. Sepe's daily activity. Yet the video did not indicate whether Mr. Sepe experienced pain while performing the activities shown." (ECF No. 149-1 at 19.) The Court addresses each argument in turn.

### A. Causation Testimony by Drs. Lemons and Orisek

Plaintiff argues the Court committed prejudicial error by preventing the Doctors from testifying about the cause of Plaintiff's injuries. (ECF No. 158 at 20.) Plaintiff asserts the Court mistakenly believed "treating physicians could only rely on what Mr. Sepe told them during treatment or what the treating physicians learned through their own senses." (ECF No. 158 at 21.) Plaintiff argues the Court incorrectly indicated that Plaintiff's counsel had not been precluded from asking the Doctors their opinion based upon everything learned from treatment during Plaintiff's case-in-chief. (ECF No. 158 at 21.) Plaintiff further contends the Court incorrectly relied on *United States v. Urena* in deciding that the Doctors could not testify as to causation generally. (ECF No. 158 at 28–29.) Defendants argue the Court could have excluded the Doctors from testifying altogether because of Plaintiff's failure to properly disclose them. (ECF No. 170 at 12.) Defendants further contend the Court properly limited the testimony because the Doctors were not disclosed as experts. (ECF No. 170 at 12–14.)

In its ruling at trial, the Court relied on both *Goodman v. Staples*, 644 F.3d 817 (2011), and *United States v. Urena*, 659 F.3d 903 (2011), when deciding the extent to which the Doctors could testify as to the cause of Plaintiff's injuries. (ECF No. 156 at 8:6–8.) In *Goodman*, the Ninth Circuit reviewed the district court's ruling on whether to limit the testimony of a treating physician hired to treat the patient when the physician did not provide an expert report. *Goodman*, 644 F.3d at 819. The Ninth Circuit held the treating physician "may testify and opine on what they saw and did without the necessity of the proponent of the testimony furnishing a

written expert report." *Id.* In *Urena*, the Ninth Circuit reviewed a district court ruling prohibiting a criminal defendant from designating a treating physician as an expert in the middle of trial. *Urena*, 659 F.3d at 906. The Ninth Circuit upheld the decision adding that a treating physician's "opinion on issues of causation required expert testimony." *Id.* at 908.

Plaintiff raises the same arguments regarding the case law as he raised in opposition to motion *in limine* # 9 and his bench brief on the issue. (*See* ECF Nos. 97 & 112.) The Court is no more persuaded by these arguments now than it was at trial. The Court stated in its final ruling:

> I am going to allow the treating physician to testify. Okay. And the treating physician can testify that what the physician learned from the patient, for example, during the course of treatment, is X, Y or Z. Based upon what the patient told me, I treated the patient. They can render — because nothing precludes a doctor, a treating physician, from rendering an opinion. In fact, if you look at 701, it envisions that a doctor is going to render an opinion. But I want to make it clear. And I agree with Mr. Cotter. I want the witnesses admonished that they're not to bring in any extraneous information other than what they learned during the course of the treatment by their own senses. And, of course, they can rely on what the patient told them. And I want to make that clear. And so to the extent that they talk about causation, they could say that the injuries are consistent with what the patient told me. Okay. They can testify to that.

(ECF No. 156 at 11:3–19.) Plaintiff has not raised any new arguments that would convince the Court the above ruling is erroneous.

Plaintiff argues the Court erred in sustaining objections to the Doctor's testimony. (ECF No. 158 at 20.) However, the rulings Plaintiff challenges clearly relate to impermissible testimony that was inconsistent with the Court's ruling. In his opposition, Plaintiff quotes a handful of objections which the Court sustained because they were beyond the limited scope of causation testimony permitted. However, in these examples, Plaintiff's counsel attempted to elicit the type of hypothetical causation questions that *Urena* explicitly prohibited. *Urena*, 659 F.3d at 908. In one such example, Plaintiff's Counsel asked "Is there any other explanation, in your opinion, for this condition in Mr. Sepe's spine other than the history he gave you of the motor vehicle accident." (ECF No. 156 at 36:18–20.) This question sought generalizations about the potential causes of Plaintiff's injuries and specifically called for Dr. Lemons to speculate about causes outside of his treatment of Plaintiff. The Court, in reliance on *Goodman*, and *Urena*

6

was clear that this type of causation testimony was not permitted because it was not based on what the doctors saw or did during treatment. However, the Doctors could opine on whether the injuries are consistent with Plaintiff's description of the accident. (ECF No. 156 at 11:17–19 ("And so to the extent that they talk about causation, they could say that the injuries are consistent with what the patient told me.").) Accordingly, the Court did not err in sustaining Defense counsel's objections.

Even if the Court was persuaded by Plaintiff's reiteration of his previous arguments, Plaintiff has not demonstrated he was prejudiced by the limitation on the scope of examination. *Ruvalcaba*, 64 F.3d at 1328 ("A new trial is only warranted when an erroneous evidentiary ruling 'substantially prejudiced' a party."). Plaintiff argues he was prejudiced by the Court's limitation of causation testimony because it was not explained to the jury why Dr. Orisek was recalled. (ECF No. 158 at 23.) Defendants assert Plaintiff was not prejudiced because the trier of fact was permitted to hear causation testimony from the treating physicians. (ECF No. 170 at 19.)

Defendants are correct that the Doctors provided causation testimony. Plaintiff recalled Dr. Orisek and elicited causation testimony regarding whether the accident caused Plaintiff's injuries. (*See* ECF No. 166 at 5:21–7:3.) Plaintiff argues recalling Dr. Orisek shifted the burden. (ECF No. 158 at 23.) However, Plaintiff is not clear on why the burden shifted on recall or even how the burden may have shifted. The jury was instructed that Plaintiff bore the burden of proving that Defendants were negligent, Plaintiff was harmed, and that Defendants' negligence was a substantial factor in causing the harm to Plaintiff. (See Jury instruction No. 22, ECF No. 142 at 23.) A jury is presumed to have followed instructions. *Brown v. Ornoski*, 503 F.3d 1006, 1018 (9th Cir. 2007). Plaintiffs fail to demonstrate the jury did not consider the Court's explicit instruction as to whose burden it was to prove causation. Plaintiff's argument that the burden shifted is unavailing.

Similarly, Plaintiff argues he was prejudiced because Dr. Lemons was not permitted to opine on causation in his initial testimony and was unavailable for recall. (ECF No. 158 at 20.) At trial, Plaintiff attempted to introduce a declaration by Dr. Lemons in lieu of recall testimony. However, the Court did not allow the declaration into evidence because Defense counsel would

not have the opportunity to cross-examine Dr. Lemons. (ECF No. 158 at 24.) Plaintiff submitted the declaration as part of his motion. (ECF No. 158 at 24.) In the declaration, Dr. Lemons's stated "There is not any other explanation in my medical opinion for Bob's neck injury other than the motor vehicle accident Mr. Sepe was involved in on September 13, 2010." (ECF No. 158 at 24.) However, this testimony still falls outside the permissible causation testimony as it opines generally as to what caused Plaintiff's injury. Because the testimony is still exactly what the Court prohibited, Plaintiff cannot prove that he was prejudiced by its exclusion or Dr. Lemons's unavailability for recall.

Accordingly, Plaintiff cannot demonstrate that he was prejudiced by the Court's ruling prohibiting the Doctors from opining generally as to the cause of Plaintiff's injury. Plaintiff's motion for new trial on the ground that the Court erred by preventing the Doctors from testifying about causation is denied.

### B. Characterizing the Doctors as "Lay Witnesses" in Front of the Jury

Plaintiff argues the Court committed prejudicial error when it allowed Defendants to refer to the Doctors as lay witnesses in front of the jury. (ECF No. 158 at 25.) Plaintiff's argument is nonsensical and fails to articulate a legal argument.

First, Plaintiff does not provide any case law that referring to a witness as such in front of the jury is an evidentiary error that would support granting a new trial. Without an legal support, Plaintiff argues "Considering treating physicians are experts, they should never be characterized as lay witnesses." (ECF No. 158 at 25.) In his motion for a new trial, Plaintiff continues to classify the Doctors as experts even though the Doctors did not testify as experts. In fact, Plaintiff's Counsel admitted on the record at trial "[the treating physician is] not retained as an expert. He's a percipient witness." (ECF No. 156 at 39:10–11.) Plaintiff therefore, understood that the testifying Doctors were not acting as experts under the definition of Federal Rule of Evidence 702, but rather as percipient witnesses under Rule 701. Thus, Plaintiff's argument rests on the erroneous conclusion the Doctors were experts for the purpose of trial.

Even if the Court erred, Plaintiff fails to show he was prejudiced by the alleged error. Plaintiff argues jury instructions fifteen and sixteen demonstrate prejudice to Plaintiff. (ECF No.

158 at 26–27.) Plaintiff quotes instruction fifteen as follows "[a] witness who was not testifying as an expert gave an opinion during the trial. You may, but are not required to, accept that opinion. You may give the opinion whatever weight you think is appropriate. . . ." (ECF No. 158 at 26.) Plaintiff asserts this instruction indicates that the jury may reject the opinion of non-experts. This is correct. However, as the Court specified and Plaintiff agreed, the Doctors did not testify as experts.[2] The Doctors testified only as percipient witnesses. Therefore, this instruction accurately states how the jury should consider the Doctors' testimony. The Court also notes that Plaintiffs argument fails to take into account that the jury heard testimony from the Doctors as to their respective education, training, and experience.[3] Thus, the jurors knew that the Doctors were qualified treating physicians. Since the Doctors were testifying as non-experts, the jurors were not entitled to an instruction identifying them as experts. Accordingly, Plaintiff fails to demonstrate he was prejudiced. Plaintiff is not entitled to a new trial on the basis of the Court allowing Defendants to refer to the Doctors as lay witnesses in front of the jury.

### C. Use of the Surveillance Video Without Prior Disclosure

Plaintiff argues he is entitled to a new trial because the Court improperly permitted Defendants to present a surveillance video to the jury that was not disclosed to Plaintiff prior to trial. (ECF No. 149-1 at 18.) Plaintiff proffers nearly identical arguments in his motion for new trial as he submitted in his bench brief on the issue. (*Compare* ECF No. 149-1 *with* ECF No. 128.) Plaintiff presents no new reasons or additional arguments than what was previously presented, therefore, the Court is not persuaded that it erred by permitting Defendants to use the video surveillance as impeachment evidence. Parties are excused from producing evidence used

---

[2] The limited scope of the Doctor's testimony was a dilemma entirely created by Plaintiff. Plaintiff failed to disclose the Doctors as experts under Rule 26 and then attempted to have the Doctors testify on issues reserved for experts.

[3] Dr. Lemons testified that he attended UC Medical School in 1986 and finished his residency at UC Davis in 1992. Dr. Lemons has been licensed to practice medicine in California since approximately 1983. He is also board certified to practice neurosurgery since 1998. Dr. Lemons's practice emphasizes traumatic injuries to the brain and spine. (*See* ECF No. 156 at 15:1–16:1.)

Dr. Orisek testified he is a physician licensed to practice in California. He graduated from New York Medical College and spent four years at LSU doing his orthopedic residency training. Dr. Orisek did a spine surgery fellowship in Gainesville, Florida which he finished in 2000. He testified that he handles any type of injury that involves the base of the skull all the way down to the tailbone area. Dr. Orisek also testified that he has a regular surgery schedule and performs surgery on Tuesdays and Thursdays at Sutter Hospital, Folsom. (See ECF No. 156 at 67:1–68:20.)

solely for impeachment purposes during initial disclosures. Fed. R. Civ. P. 26(a). However, a party must "disclose impeachment evidence in response to a specific discovery request." *Newsome v. Penske Truck Leasing Corp.*, 437 F. Supp. 2d 431,436 (D. Md. 2006). Here, Plaintiff did not request the surveillance material during initial disclosures. Furthermore, the Court permitted the evidence for the purposes of impeachment. As such, Defendants were not required to disclose the videos when the videos were not specifically requested in the initial disclosures. The Court did not err by permitting the surveillance videos to be shown at trial.

Plaintiff asserts for the first time in reply that the video was not impeachment evidence, but rather was offered as rebuttal evidence in an attempt to disprove evidence of the extent of Plaintiff's injuries. (ECF No. 171 at 7.) The Court will not address arguments raised for the first time in a reply. *See Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007).

For the reasons above, Plaintiff's motion for new trial is denied on the grounds the Court erred by admitting the surveillance video into evidence.

### IV. CONCLUSION

Plaintiff has failed to provide this Court with a reason why a new trial should be granted. For the foregoing reasons, Plaintiff's Motion for New Trial (ECF Nos. 149 & 157) is hereby DENIED.

IT IS SO ORDERED.

Dated: June 12, 2017

Troy L. Nunley
United States District Judge

10